UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Mae Lieng Saechao,

Plaintiff,

v.

Commissioner of Social Security,

Defendant.

No. 1:26-cv-830-GSA

**OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**

(ECF No. 12, 16)

## I. Introduction

Plaintiff Mae Lieng Saechao seeks judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits (SSDI) pursuant to Title II of the Social Security Act.

## II. Procedural Background

On January 19, 2023, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act alleging disability as of March 25, 2020.

The Commissioner denied Plaintiff's claim initially on July 11, 2023. AR 78–81, and on reconsideration on April 17, 2024. AR 90–92. The ALJ held a hearing on February 18, 2025. AR 25–54. On February 28, 2025, the ALJ issued an unfavorable decision. AR. 7–24. The Appeals Council denied Plaintiff's request for review on December 4, 2025, and this appeal followed. AR.

1–5[1]

## III. The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a Claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but it is less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation and quotations omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the Agency's decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his/her physical or mental impairment or impairments are of such severity that s/he is not only unable to do his/her previous work, but cannot, considering his/her age, education, and

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. ECF Nos. 4, 9.

work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which s/he lives, or whether a specific job vacancy exists for him/her, or whether s/he would be hired if s/he applied for work. 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for an ALJ to employ when evaluating the alleged disability of a claimant. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether the claimant has engaged in substantial gainful activity during the period for which Plaintiff is alleging he or she experiences a disability; 2- whether the claimant has a medically determinable "severe impairments" affecting the claimants ability to perform basic work activities; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in the agency's regulations (20 C.F.R. § 404, Subpart P, Appendix 1); 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the claimant has the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given the claimant's RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## IV. <u>The ALJ's Decision</u>

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of March 25, 2020. AR 12.

At step two, the ALJ found that Plaintiff had the following severe impairments: bipolar disorder and attention deficit hyperactive disorder (ADHD). AR 12.

At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 12–14.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the following RFC:

> The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: She can perform jobs of a non-complex nature requiring the performance of no more than simple, routine tasks, and she can maintain occasional contact with coworkers. In addition, the claimant should have no contact with members of the general public, and she should not work in environments exposing her to unprotected heights of machinery with dangerous, moving, mechanical parts.

AR 14–18.

At step four, the ALJ found had no past relevant work. AR 18.

At step five, in reliance on the testimony of a vocational expert (the VE), the ALJ found that Plaintiff could perform the following jobs existing in significant numbers in the national economy: hand packer, store laborer, and industrial cleaner. AR 19. Accordingly, the ALJ found that Plaintiff was not disabled at any time since the alleged disability onset date of March 25, 2020. Id.

## V. Issue Presented

Plaintiff asserts one claim of error: "the ALJ failed to articulate clear and convincing reasons for rejecting Saechao's subjective complaints." MSJ at 7, ECF No. 12.

### A. The RFC & Subjective Symptoms Generally

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which comprises the most that a claimant is still capable of doing despite the claimant's particular limitations. This RFC represents an assessment "based on all the relevant evidence" contained within the Certified Administrative Record. 20 C.F.R. § 416.945(a)(1). The residual functional capacity must consider all of the claimant's impairments, whether those impairments are severe or non-severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

As for a Claimants subjective symptom testimony, an ALJ performs a two-step analysis to

determine whether a Plaintiff's testimony regarding subjective pain or symptoms is credible. See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82. If the claimant satisfies the first step and the ALJ finds that there is no evidence of malingering in the record, the ALJ must then evaluate the intensity, persistence and limiting effects of the claimant's symptoms to determine the extent to which those symptoms limit the individual's ability to perform work-related activities. S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014); see also S.S.R. 16-3p at *10. Subjective testimony cannot be rejected on the sole ground that the testimony is not entirely corroborated by the objective medical evidence in the record. Nevertheless, the medical evidence is still a relevant factor in determining the severity of Claimant's pain and its disabling effects. See, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

In addition, other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- any applicable precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any prescribed medication; 5- treatment other than medications that the claimant receives; 6- any other measures the claimant uses to relieve pain or other symptom; and 7- other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

**B. Summary of The Evidence**

Plaintiff provides the following factual summary to which Defendant does not object:

> Saechao was psychiatrically hospitalized on October 9, 2020, because of suicidal ideation. AR 359. Toxicology was negative. AR 362. On October 28, 2020, on examination, Saechao had pressured speech; partial insight and judgment; distracted attention/concentration; and dysthymic/sad and anxious mood. AR 483. On November 18, 2020, Saechao had fast rate and pressured speech; partial insight and judgment; and anxious and irritable mood. AR 476-477. Exam was relatively normal on December 16, 2020. AR 409. On January 20, 2021, Saechao had dysthymic, anxious, and irritable mood on exam. AR 405. She presented similarly

on February 25, 2021. AR 402. Exam was relatively benign on March 17, 2021. AR 399. She had anxious mood on April 14, 2021. AR 396. She was disheveled with pressured speech, and dysthymic/sad and anxious mood on May 3, 2021. AR 392-393. Exam was normal on June 22, 2021, but she reported feeling tired with anxious and depressed mood. AR 389. On July 21, 2021, she had pressured speech with anxious and irritable mood. AR 387. She presented similarly on August 1, 2021, and October 4, 2021. AR 384 and 379-380.

On November 24, 2021, Saechao reported cycles of loss of sleep for 1-2 days and then crashing for 1-2 days. AR 375. On exam, she had fast and loud speech; distracted attention/concentration; elevated/happy mood; poorinsight/judgment. AR 376. On December 13, 2021, she reported being up for 2-3 days, and then crashing, sleeping for extended periods, being unable to complete tasks. AR 372. On exam, she had fast, pressured, and loud speech with anxious and irritable mood. Id.

On July 11, 2022, Saechao discussed how she had good results in the past with Adderall. AR 500. On July 15, 2022, she had fast speech with anxious mood. AR 518. Her PH-Q9 score was consistent with moderate severe depression. AR 519. On December 13, 2022, Saechao was again involuntarily hospitalized. AR 533. She had been having manic episodes where she had been up for four days. AR 529. F. Dehnavifar, Psy.D., served as the consultative psychologist, and wrote a report dated June 18, 2023. Dr. Dehnavifar noted Saechao's activities of daily living including preparing meals independently; being able to drive although she was fearful of driving; shopping independently; and maintaining hygiene. AR 542. On exam, Dr. Dehnavifar noted rapid, loud speech with need for redirecting; distracted attention; mild to moderate difficulty with calculations; some impairment of judgment; limited, poor insight; mood fluctuations; intact, tangential, and distracted thought process; and mildly overvalued ideas and thoughts regarding thought content. AR 542-543. Dr. Dehnavifar assessed either none or mild limits. AR 546.

On June 22, 2023, Saechao presented with pressured speech; anxious mood; and poor insight/judgment on exam. AR 617. On October 2, 2023, it was observed that she had had none no shows from October 2020 to January 2022. AR 613. On December 28, 2023, she had depressed and anxious mood on exam. AR 563. Her PH-Q9 score was consistent with severe depression. AR 560. On January 24, 2024, she had depressed and anxious mood, and she was labile. AR 557. On February 4, 2025, she had anxious and depressed mood; affect was labile and tearful; and speech was rapid and pressured, bounding between topics. AR 622.

MSJ at 4–6.

Plaintiff also provides the following summary of testimonial evidence to which Defendant also does not object:

Saechao testified that she is incapable of maintaining employment due to her ongoing bipolar and attention deficit hyperactivity disorder. AR 32. She mentioned, for example, that she has inconsistent sleep patterns. Id. Due to manic symptoms, she might stay awake for approximately four days, and then experience a crash thereafter. Id. She tries to be productive; however, her difficulties with focus or concentration pose difficulties in completing tasks. AR 33. Saechao described similar symptoms in the two Function Reports. AR 253 and 294-295.

MSJ at 7.

### C. Plaintiff's Arguments relating to Subjective Symptoms

To begin, the ALJ found that:

> Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 17.

The ALJ, having found no malingering, was required to identify clear and convincing reasons, supported by substantial evidence, to discount Plaintiff's subjective symptoms. In support of this requirement, the ALJ relied mainly on both objective and opinion evidence.

Plaintiff's stated difficulties, according to her testimony as set forth above, can be summarized as follows: 1- ongoing bipolar and attention deficit hyperactivity disorder; 2- inconsistent sleep patterns due to manic symptoms; 3- difficulties with focus or concentration pos[ing] difficulties in completing tasks; and 4- speech difficulties. MSJ at 8, 9.

Discussion of these follow, but in reverse order.

#### 1. Speech

Plaintiff begins:

> the ALJ cited two inconsistencies. First, the ALJ stated that Saechao's allegation that her ability to talk is affected is inconsistent with the record. In this regard, the ALJ pointed to two responses in the two Function Reports wherein Saechao checked off the box that her ability to talk is affected. AR 258 and 300. The ALJ cited two examinations of December 13, 2022, and June 22, 2023, wherein Saechao had normal speech.
>
> MSJ at 9.

Plaintiff then sets forth the following findings with respect to her speech difficulties:

- "It begins from October 28, 2020, at which time Saechao was noted to have pressured speech. AR 483." MSJ at 9.
- "On November 18, 2020, Saechao had fast rate and pressured speech" MSJ at 4.
- "She was disheveled with pressured speech . . . on May 3, 2021" MSJ at 5.
- "On July 15, 2022, she had fast speech and anxious mood. AR 518." MSJ at 11
- "On July 21, 2021, she had pressured speech . . . AR 387." Id.

- "On December 13, 2021, she had fast, loud and pressured speech . . . AR 373" MSJ at 11.
- "On June 22, 2023, she had pressured speech . . . AR 617." MSJ at 11.
- "Other examinations revealed fast, loud, and/or pressured speech through 2025. AR 372, 379, 383, 386, 392, 476, 518, 542, 616 and 622."

MSJ at 9–10

In response, Defendant identifies the following:

- "But, as the ALJ noted, Plaintiff's allegations were 'inconsistent with mental status examinations showing . . . <u>normal speech</u>, linear, coherent, and goal directed associations, intact insight, and intact judgment.' Tr. 17–18 (citing Tr. 368–69, 372–73, 384, 395– 96, 413–85."' Resp. at 4. (emphasis added).
- "December 2022 intake mental status exam from brief involuntary psychiatric due to manic episode indicated Plaintiff was oriented times four with <u>normal speech</u> . . . 616–17."). Resp. at 4 (emphasis added).

Resp. at 4.

Although both parties have cited evidence concerning speech, significantly Plaintiff elsewhere states that "*Saechao's ability to talk is not a primary basis as to why she is unable to work. She did not mention speaking difficulties when asked by the ALJ why she is unable to work. AR 32-35*." MSJ at 9. (emphasis added). Nevertheless, the ALJ adequately addressed Plaintiff's speech concerns as follows:

First, the ALJ observed that:

> In December of 2022, the claimant was placed on a brief involuntary psychiatric hold due to a manic episode (see Exhibit 8F, p. 1), but an intake screen form showed she was oriented times four with <u>normal speech</u>, appropriate behavior, an appropriate affect, adequate insight, and a normal thought process (see, Exhibit 8F, p. 3 at AR 15 (emphasis added)).

Second, the RFC specifies no contact with the general public, and only occasional contact with coworkers. Thus, given that the RFC limits Plaintiff to essentially working in relative isolation, Plaintiff's propensity for fast, loud and pressured speech would not impermissibly impede her ability to perform jobs the VE identified. <u>See,</u> <u>Ford v. Comm'r of Soc. Sec.</u>, No. 2:22-CV-0494-DMC, 2023 WL 5021162, at *2 (E.D. Cal. Aug. 7, 2023) (finding for Defendant where

plaintiff exhibited pressured speech but the RFC specified he "cannot have public contact and cannot perform teamwork-related tasks.") (emphasis added); Giacomazzi v. Comm'r of Soc. Sec., No. 1:23-CV-00939-SAB, 2024 WL 3378658, at *2 (E.D. Cal. July 11, 2024) (finding for Defendant where plaintiff exhibited pressured speech but the RFC provided plaintiff was limited to no public contact and occasional coworker contact); Tyi Rai F. v. O'Malley, No. CV 23-07594-AS, 2024 WL 3937548, at *2 (C.D. Cal. Aug. 23, 2024) (same).

**2. Focus or Concentration**

As for difficulties with focus or concentration impeding task completion, Plaintiff disagrees with the ALJ's analysis for the following reason(s):

> The second alleged inconsistency that the ALJ noted is that Saechao's concentration being affected is also allegedly unsupported. AR 17. In rejecting this subjective complaint, the ALJ cited a single examination, to wit, Dr. Dehnavifar's consultative psychological evaluation, which showed no impairment in concentration. Id.
>
> While it is true that Dr. Dehnavifar found no impairment in concentration, the ALJ failed to mention that Dr. Dehnavifar did find that Saechao was distracted with respect to attention. AR 543. Her thought process was intact, tangential, and distracted. Id. Thus, contrary to the ALJ's rationale, Dr. Dehnavifar's examination did yield abnormal findings supportive of concentration being affected. Once again, the ALJ cherry-picked that part that supported an adverse determination while ignoring others that do not.

MSJ at 10.

Plaintiff's discussion on this point is not persuasive. Here, Dr. Dehnavifar's opined that Plaintiff had a "mild limitation" as to her "Ability to sustain concentration, attention, consistency, and persistence in work-related activity at a reasonable pace." AR 546. This opinion does not support anything more than mild focus and/or concentration limitations, which in turn support the ALJ's non disability determination.

Further, contrary to Plaintiff's contention that the ALJ cited but a single examination, e.g. the June 18, 2023 consultative exam with Dr. Dehnavifar, the ALJ in fact cited other records which showed intact attention and concentration:

> In October of 2020, the claimant was briefly placed on an involuntary psychiatric hold because . . . Subsequent mental status examinations revealed an anxious and irritable mood, but the claimant also exhibited no abnormal or psychotic thoughts, <u>and her attention and concentration were intact</u> (Exhibit 3F, pp. 8-9, 20, 31-32; 4F). In addition, in January of 2022, a mental status examination <u>showed intact attention and concentration</u> with normal speech, linear, coherent, and goal directed associations, intact insight, and intact judgment (Exhibits 3F, pp. 4-5; 4F, pp. 6-7, at AR 15) (emphasis added).

The ALJ further described a June 2023 examination, which is <u>not</u> the June 2023 consultative examination:

> Thereafter, in June of 2023, she reported she was not doing well (see Exhibit 15F, p. 10) and a mental status examination revealed an anxious mood with a congruent affect and poor insight and judgement, <u>but her attention and concentration were intact</u>, and her associations were linear, coherent, and goal directed (see Exhibit 15F, pp. 11-12). Furthermore, during a consultative evaluation that same month, she obtained a score of 26 on the Mini Mental State Examination (MMSE), which is "effectively normal" (Exhibit 11F, p. 6, at AR 15) (emphasis added).

**3. <u>Manic Symptoms</u>**

Plaintiff next emphasizes her manic experience of several days without sleep followed by a crash. However, the record is not clear on how often these manic episodes occur, how long they usually last, how often they result in a loss of sleep, how often the loss of sleep results in a crash, and finally, the length of time a crash normally lasts. Thus, Plaintiff's reference about her manic symptoms, without more, fail to adequately support how its effect were work disabling.

**4. <u>Ongoing Bipolar & Attention Deficit Hyperactivity Disorder</u>**

Importantly, these are diagnoses, not symptoms, and they were identified by the ALJ as severe impairments. But it should also be noted that "a physician's diagnosis alone' cannot establish a medically determinable impairment for social security purposes." <u>Walters v. Kijakazi</u>, No. 20-35861, 2022 WL 1046208, at *1 (9th Cir. Apr. 7, 2022) (citing Social Security Ruling 12-2p, 2012 WL 3104869, at *2–4 (Jul. 25, 2012)). Notwithstanding, to the extent that these diagnoses are claimed to affect the Plaintiff's ability to maintain focus and/or concentration, this concern has been adequately addressed above. Specifically, and again, Dr. Dehnavifar's opinion does not

support more than mild attention and concentration limitations.

It is also worth mentioning the ALJ's intimation that the ADHD diagnoses might not be entirely based on authentic symptoms. As the ALJ explained:

> However, the record also showed she was "focused on being diagnosed with ADHD," "focused on getting prescribed amphetamines," and she was noted as being manipulative (Exhibit 14F, pp. 2-3). In addition, she had a total of nine "no shows" for appointments from October of 2020 to January of 2022 (Exhibit 15F, p. 8 at AR 15).

AR 15.

Plaintiff disagrees this suggestion:

> First, drug abuse is not at issue in this case. Saechao has used marijuana in high school; she uses a vape pen. AR 542. Toxicology has been negative for drugs. AR 362, 474 and 508. Saechao needs Adderall for her ADHD. Such stimulants do not cause individuals with ADHD to have increased stimulation; rather, they have the opposite effect of enhancing the ability to pay attention, think and stay motivated. See https://my.clevelandclinic.org/health/treatments/11766-adhd-medication (last visited April 22, 2026). Thus, Saechao has not sought out stimulants for any reason other than an attempt to address her medical symptoms. She has had good results with Adderall. AR 500.

MSJ at 15–16.

However, neither the Defendant nor the ALJ stated that drug use or abuse was an issue, and nor do they dispute that toxicology was negative. The ALJ merely observed that Plaintiff's providers objectively noted her focus on being diagnosed with ADHD and being prescribed amphetamines.

**D. The ALJ's Further Findings/Explanations**

**1. <u>Daily Activities</u>**

An ALJ may rely on activities of daily living as a basis for rejecting a claimant's subjective complaints of pain. The ALJ may either 1) rely on the performance of activities of daily living if the activities performed contradict the claimant's testimony; or 2) rely on the performance of activities of daily living if the activities are performed to the extent that they meet the threshold for

transferable capabilities. Orn, 495 F.3d at 639.

The ALJ explained that Plaintiff's "alleged inability to work is inconsistent with the claimant's report that she is independent for basic activities of daily living, she can prepare meals independently, she can shop at stores independently, and she can shower and dress herself independently (Exhibit 11F, p. 4)." AR 18.

Plaintiff argues as follows:

> As a third reason for rejecting Saechao's subjective complaints, the ALJ criticized the fact that Saechao was independent for activities of daily living in that she could prepare meals independently; shop at stores independently; and shower and dress herself independently. AR 18. But this is not the complete picture. The ALJ omitted that portion where, when asked about daily activities, Saechao cited her crafting hobbies and activities, which she is unable to finish due to flight of ideas and distractibility. AR 542. Furthermore, the Function Report adds greater context. For example, Saechao explained that her oldest daughter and their father are mainly the ones responsible for the cooking. AR 255. Saechao noted that she can use the microwave food, but she does not prepare meals particularly because of safety issues where she might forget that the stove is on. Id. She cannot focus enough to prepare meals. Id.
>
> Regarding shopping, Saechao mentioned that she does not know how to budget. AR 256. Saechao's ability to handle funds is affected by his manic episodes, which has manifested as a gambling problem. AR 44. As for hygiene, she can bathe and generally maintain hygiene, but she is affected by bouts of mania and depressive phases related to her bipolar disorder. AR 254. She might shower maybe 2-3 times per month. Id. She hardly changes clothes during depressive phases. Id. Her kids feed her during depressive phases. Id.
>
> The ALJ's reliance on the ability to perform certain activities also fails to adequately contemplate the episodic nature of Saechao's bipolar disorder, which manifests in periods of mania and depressive phases. See e.g., Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (more prolonged daily activities is not inconsistent with disability where the underlying condition is episodic); See also Edler v. Astrue, 391 F.App'x 599, 601 (9th Cir. 2010) (periodic improvement or cessation of symptoms not inconsistent with disability based on episodic symptoms). For an individual such as Saechao, the fact that she can perform these activities in some instances fails to undercut her subjective complaints regarding her debilitating symptoms.

Although Plaintiff's argument has some merit, so does the ALJ's explanation. See, Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (finding the ALJ satisfied the "clear and convincing" standard for an adverse credibility determination where

claimant engaged in "gardening and community activities . . . evidence [which] did not suggest Valentine could return to his old job," but "did suggest that Valentine's later claims about the severity of his limitations were exaggerated.").

In the end, whether or not the Plaintiff's daily activities as cited by the ALJ can be said to undermine the Plaintiff's testimony, the ALJ's simple reference to them was nevertheless inconsequential to the ALJ's ultimate nondisability determination. See, Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014); Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012). "An error is harmless if it is 'inconsequential to the ultimate nondisability determination' . . . or 'if the agency's path may be reasonably discerned,' even if the agency 'explains its decision with less than ideal clarity[.]" Treichler, 775 F.3d at 1099 (citation omitted).

**2. The Medical Opinions**

For applications filed on or after March 27, 2017, new regulations eliminate a hierarchy of medical opinions and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization and other factors. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and the agency will articulate how the factors of supportability and consistency are considered. Id. "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." Woods v. Kijakazi, 2022 WL 1195334, (9th Cir. Apr. 22, 2022) at *6.

In addition, an ALJ must consider the objective medical evidence along with other evidence when evaluating the reliability of symptom testimony. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); see also Smartt v. Kijakazi, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it

as undercutting such testimony."). It is also true that lack of corroboration from the medical evidence, on its own, is not a clear and convincing basis for rejecting a claimant's testimony. Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017).

On June 18, 2023, Dr. Dehnavifar performed a consultative psychiatric evaluation and opined Plaintiff's had either no limitation or a mild limitation in her ability to: 1- understand, carry out, apply and remember simple and complex instructions; 2- sustain concentration, attention, consistency, and persistence in work-related activity at a reasonable pace; and 3- maintain effective social interaction on a consistent and independent basis with others, including supervisors, coworkers, and the public (Exhibit 11F, p. 8). Dr Dehnavifar also found that Plaintiff had a mild impairment in her ability to adapt to the usual stresses and pressures common to a competitive work environment, including completing a normal workday or workweek and responding and adapting appropriately to changes in a work setting (Exhibit 11F, p. 8).

The ALJ found Dr. Dehnavifar's opinion was generally persuasive because it was largely consistent with the medical and other evidence. Dr. Dehnavifar also found that Plaintiff's thought process and progression were linear with no decline in attention, concentration, and memory (see Exhibit 12F, p. 15), and that Plaintiff also had non-delusional thought content, and no suicidal ideation (see Exhibit 17F, p. 5).

The ALJ further explained:

> Dr. Dehnavifar's evaluation findings (see Exhibit 11F) also provide support for the opinion. On the other hand, given her treatment for bipolar disorder (see Exhibits 2F, pp. 6, 8; 5F, p. 3; 7F, p. 5; 11F, p. 7; 13F, p. 8; 14F, pp. 2-3; 16F, p. 4; 17F, p. 3) and ADHD (see Exhibits 3F, p. 1; 5F, p. 3; 7F, p. 5; 15F, p. 2) with prior brief psychiatric hospitalizations (see Exhibits 2F, p. 7; 6F, p. 6; 8F), I found she has some greater limitations, as that is most consistent with the record.

As to the non-examining state agency consultants, the ALJ explained:

> On July 10, 2023, Nicole Sampson, Ph.D., a state-agency consultant, found the claimant retains the capacity to understand simple instructions and she retains the capacity to carry out simple instructions (Exhibit 1A, pp. 7-8). Dr. Sampson further found she may have occasional difficulty focusing and concentrating, but in general, she can complete a normal workday and workweek (Exhibit 1A, p. 8). In addition, the claimant would work best with occasional contact with the public and

> coworkers and she would respond best to a static work environment with minimal changes in work demands (Exhibit 1A, pp. 8-9). Thereafter, on April 16, 2024, Barry Rudnick, MD, another state-agency consultant, found the claimant has these same limitations and found that to the extent she might have symptoms in a work setting, she should avoid inherently hazardous work activities without appropriate safeguards and supervision (Exhibit 4A, pp. 5-8). I find the prior administrative medical findings of Drs. Sampson (see Exhibit 1A) and Rudnick (see Exhibit 4A) persuasive because they are consistent with the overall evidence of record. For example, they are consistent with and adequately account for the claimant's mental impairments, especially considering mental status examinations showing no abnormal or psychotic thoughts with intact attention and concentration were intact (see Exhibit 3F, pp. 8-9, 20, 31-32; 4F), normal speech, linear, coherent, and goal directed associations, intact insight, and intact judgment (see Exhibits 3F, pp. 4-5; 4F, pp. 6-7). Drs. Sampson and Rudnick also provide support for their prior administrative medical findings with specific references to the evidence.

In short, the ALJ found Dr. Dehnavifar's <u>opinion</u> persuasive for much the same reason the ALJ independently found that the <u>objective</u> evidence supported no limitations beyond those assessed in the RFC.

In critiquing the ALJ's analysis, Plaintiff argues:

> In rejecting Saechao's subjective complaints, the ALJ also did state that her complaints are inconsistent with the opinions of the two state agency medical consultants and the consultative psychologist. AR 18. However, in this analysis, <u>their opinion evidence is part and parcel of the objective medical evidence</u>. <u>Bates v. Sullivan</u>, 894 F.2d 1059, 1062-63 (9th Cir. 1990) (rev'd on other grounds). Where mental impairments are concerned, mental status examination findings are the objective evidence. <u>Buck v. Berryhill</u>, 869 F.3d 1040, 1049 (9th Cir. 2017)
>
> . . .
>
> But even if it could be stated that Saechao's subjective complaints are inconsistent with those three doctors' opinions, this will be the sole surviving basis upon which Saecho's subjective complaints will have been rejected. Lack of support from the objective evidence cannot be the sole basis upon which a claimant's subjective complaints are rejected. Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) (en banc). Lack of corroboration from the medical evidence is not a clear and convincing basis for rejecting a claimant's testimony. Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017); See also Social Security Ruling 16-3p (ALJ must not reject a claimant's statements solely based on a lack of corroboration from the medical evidence) (emphasis added)

Plaintiff's argument is unpersuasive. First, the non-examining state agency consultants, Drs. Sampson and Rudnick, reviewed Plaintiff's medical file at the initial and reconsideration levels and rendered opinions <u>about what that objective evidence showed</u> from a functional perspective.

Because they did not examine the Plaintiff, nor make objective observations of the Plaintiff, they rendered opinion evidence, not objective evidence. Thus, the ALJ did not solely rely on objective evidence as Drs. Sampson and Rudnick's opinion evidence was in addition to, but not part of, the objective evidence. In contrast, had Dr. Dehnavifar's objective observations been the sole basis upon which the ALJ relied, it may well not have been sufficient for rejecting the Plaintiff's testimony. See, Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017), supra; Social Security Ruling 16-3p (ALJ must not reject a claimant's statements solely based on a lack of corroboration from the medical evidence). But see also, Smartt v. Kijakazi, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it [*22] as undercutting such testimony.")

Next, after making objective observations, Dr. Dehnavifar rendered an opinion about the functional implications of these observations. He opined that Plaintiff had no more than mild limitations or impairments in any area of mental functioning.

Plaintiff concludes as follows:

> Finally, elsewhere in the decision, the ALJ noted from the record that Saechao was focused on getting prescribed amphetamines and she was being manipulative, and that she had a total of nine "no shows" in a 16-month period. AR 15.
>
> It should be noted that the ALJ was merely summarizing from the record. The ALJ did not cite these as reasons why he chose to discredit Saechao's statements. See Lambert v. Saul, 980 F.3d 1266, 1277-78 (9th Cir. 2020) (summary is not enough; ALJ must explain which evidence contradicted specific testimony). Providing a "detailed history" of Saechao's medical history "is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." Id. (quoting Brown-Hunter, 806 F.3d at 494 (italics in the original)).
>
> Nevertheless, Saechao will address these issues in turn. First, drug abuse is not at issue in this case. Saechao has used marijuana in high school; she uses a vape pen. AR 542. Toxicology has been negative for drugs. AR 362, 474 and 508
>
> Saechao needs Adderall for her ADHD. Such stimulants do not cause individuals with ADHD to have increased stimulation; rather, they have the opposite effect of enhancing the ability to pay attention, think and stay motivated. See https://my.clevelandclinic.org/health/treatments/11766-adhd-medication (last visited April 22, 2026). Thus, Saechao has not sought out stimulants for any reason

> other than an attempt to address her medical symptoms. She has had good results with Adderall. AR 500.
>
> As for the no-shows, failing to obtain generally can support an adverse determination regarding a claimant's statements. Orn, 495 F.3d at 637. However, the Ninth Circuit has also long held that it is questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking treatment. Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996); Garrison, 759 F.3d at 1018 n. 24. In this regard, some mental status examinations have shown diminished insight and judgment, which is consistent with the episodic manic and depressive phases of her bipolar disorder. AR 376, 476, 483, 543 and 617.

First, a discussion of Plaintiff's alleged drug seeking behavior has already been addressed above. Secondly, as for the nine no-shows, Plaintiff asserts that these may be the result of "poor judgment in seeking treatment." MSJ at 16 (citing Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (explaining that it is questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking treatment.). Assuming Plaintiff is correct, Plaintiff nevertheless failed repeatedly to appear at follow-up appointments. In the end, a claimant's "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" can undermine her allegations about the severity of an impairment. Fair v. Bowen, 885 F.2d 597, 603–04 (9th Cir. 1989).

## VI. Conclusion

The ALJ identified clear and convincing reasons, supported by substantial evidence, to appropriately discount Plaintiff's contentions that her subjective symptoms rendered her incapable of employment.

## VII. Order

Substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.

Accordingly, it is ordered that:

1. Plaintiff's motion for summary judgment (Doc. 12) is **DENIED**.

2. Defendant's cross motion (Doc. 16) is **GRANTED.**
3. This decision of the Commissioner of Social Security is **AFFIRMED**
4. The Clerk of Court is directed to enter judgment in favor of Defendant Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated: **July 12, 2026** **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE